## ALLEN, Executrix *v.* WILLS et al.

The object of the statute of 18 March, 1844, is to enable mechanics and other workmen employed by a contractor to obtain the benefit of any amount due to him by the proprietor.

Where one who has contracted to erect a building, after having performed part of the work; becomes unable to fulfil his contract, the proprietor, on his default, may proceed to complete the building; and, if the amount expended in its completion, and the damages to which the proprietor may be legally entitled in consequence of the default, do not equal the unpaid instalment stipulated for the work, the contractor will have, to the extent of the residue, a claim, *ex æquo et bono,* for his unpaid work. In the absence of evidence to the contrary, it will be presumed that the proprietor has been benefited to that extent.

Where a proprietor paid to one with whom he had contracted for the erection of a building an instalment before it became due under the contract, and the contractor subsequently failed, and the proprietor finished the building for a sum not exceeding the next and last instalment, and the amount of the instalment so paid in advance, after deducting from it the damages recoverable under the contract, was enough to pay the mechanics and other workmen who had notified the proprietor of their claims before the period at which the instalment so paid in advance became due, the proprietor will be responsible for the amount of their claims.

A party will not be liable for costs where she deposits in court the amount actually due by her; but where she contends that she is liable only for a sum less than the result of the litigation shows to have been due by her, she will be bound for the costs.

Mechanics, laborers, and furnishers of materials employed by one who has contracted for the erection of a building, are only entitled to the same privilege as the contractor, and where the contractor has failed to register his contract as required by law, those employed by him have no privilege. Stat. 18 March, 1844, s. 4. C. C. 2743, 2744, 2746, 3239.

APPEAL from the Third District Court of New Orleans, *Kennedy*; J. *Wray*, for the appellant. *Grivot, Davis, Saver, Race* and *Foster*, for different defendants. The judgment of the court was pronounced by

SLIDELL, J. The plaintiff's testator contracted with *Wills* for the erection of a house for $7,900, to be paid in six instalments. The fifth instalment was made payable when the plastering should be completed. The house was to be finished and delivered on the 20th September, 1847, under a penalty of $50 per week during the delay. The house was never completed by *Wills*. He became insolvent, acknowledged his inability to proceed with the contract, and was formally put in default, on the 25th November, 1847. The plaintiff then proceeded to have the buildings finished at her own expense, which was accomplished on the 8th January. The plastering was not entirely finished until about the 1st December. The plaintiff, however, paid *Wills* the fifth instalment as early as the 16th November.

The principal question presented is, whether the appellees, three workmen who notified the plaintiff under the act of 1844 before the plastering was finished, can treat the payment as "anticipated" within the meaning of the law, and hold the plaintiff liable to them accordingly.

If *Wills* had continued the performance of the contract, and had not finished the plastering before the appellees notified their claims, the anticipated payment would clearly have been void, and against them. Has the plaintiffs been relieved from responsibility by the fact that *Wills* subsequently failed to perform the contract.

The object of the statute of 1844 was to enable the creditors of the con-

13

ALLEN
*v.*
WILLS.

tractor to obtain the benefit of any amount due to him by the proprietor. If a contractor violate his contract after having done a portion of the work, his rights by reason of what he has done are not wholly gone. The proprietor, upon his default, may proceed to complete the building, and if the sum expended in such completion, and the damages sustained by the default and legally chargeable, do not absorb the unpaid instalments stipulated for the work, the contractor would have, to the extent of the residue, a claim, *ex æquo et bono*, for his unpaid work. In the absence of evidence to the contrary, it would be presumed that the proprietor had been benefitted to that extent. In the present case, the plaintiff, after *Wills'* default, finished the buildings at an expense not exceeding the sixth instalment. If, therefore, she had not paid the fifth instalment, she would have been bound to pay *Wills* the amount of the fifth instalment, deducting only such damages for the delay as were recoverable under the contract. What would have been the amount of those damages? The penalty stipulated in case of the failure to finish the house in September, was $50 a week, but this penalty did not begin to run until *Wills* was put in default; for there was no stipulation in the contract that he should be deemed to be in default by the mere fact of his failure to complete the building at the specified time. See Civil Code 1905, 1927, 2122. Rogron, 1230. Merlin, *verbo*, Peine Contractuelle, § 3. If we deduct from the amount of the fifth instalment damages at the stipulated rate from the date of the default to the date of the completion of the building, it would still leave a sum sufficient *to cover* the claims of the appellees. When the plaintiff paid the fifth instalment, the contract was in full force. *Wills* was not then in default. Under the contract the instalment was then due, and the plaintiff paid in her own wrong. By having done so she is now empty handed; but if she had avoided doing what the law, in the interest of mechanics and laborers has forbidden, she would have had in hand, when the appellees gave their notice, a fund sufficient to pay them, although at that time unascertained.

As, therefore, we believe the object of the law was to secure to the creditors of the contractor the benefit of whatever the proprietor might justly owe him by reason of the undertaking, as the plaintiff paid unseasonably, which the law forbids; and as the appellees gave notice before the period arrived when *Wills* had a right to receive, the consequences of her imprudence must be borne by her and not by the creditors.

The appellant complains that the costs of the suit were charged to her, and that they ought to have been charged to the fund. If she had deposited in court what she was bound to pay, she would have been entitled to such an exemption. But she alleged herself to be liable for only $281 50, and the result of the litigation shows her to be liable for a larger sum.

There was error in so much of the judgment as decreed a privilege in favor of the appellees. Under the act of 1844, as well as under the Code, they are only entitled to the same privilege as the contractor had. But *Wills* had no privilege, for his contract was not recorded. See act of 1844, s. 4. Civil Code, 2743, 2744, 2746, 3239. *Taylor* v. *Crain*, 16 La. 292. They must rank as ordinary creditors of the succession.

It is, therefore, decreed that so much of the judgment of the District Court as grants the appellees a privilege be reversed; and that, in other respects, the said judgment be affirmed; the said appellees *James McQuaid, A. Curtis* and *Robert Daley* paying the costs of this appeal.