**(117 So. 727)**

**No. 26992.**

**HERMAN BROS. v. TROXLER.**

June 4, 1928. Rehearing Denied July 2, 1928.

Arthur J. Peters, of New Orleans, for appellant.

E. Louise Louque and James J. Landry, both of New Orleans, for appellees.

OVERTON, J. This suit is one growing out of a contract, entered into on February 26, 1923, between plaintiffs, as contractors, and defendant, as owner, to make certain alterations and repairs in a building, located on St. Charles avenue, in New Orleans, the lower part of which was intended to be used for commercial purposes, and the upper part for living apartments.

The work called for by the contract was to have been done for $8,463, and completed on or before May 22, 1923. But, during the execution of the contract, certain alterations were made in the specifications, which plaintiffs urge entitle them to additional compensation, amounting to $275.

Plaintiffs received on the contract $4,958.-63. The work was not completed on May 22, 1923, and on December 3, 1923, defendant ordered plaintiffs not to proceed further with it, and canceled their contract.

Plaintiffs, contending that the contract was practically completed when they were ordered to quit, urge that the notice to quit entitles them to the full balance that would have been due had, the work been completed. They therefore sue for a balance of $3,504.-37 on the contract, and $275 for extras, or a total balance of $3,779.37.

Defendant admits that plaintiffs are entitled to the extras, amounting to $275, save an item of $12 for cleaning and stacking old bricks, which defendant contends should be reduced to $3.75, and another for alleged extra weight of steel, amounting to $60.30, which defendant denies, and contends that

the change that brought about this alleged extra required 2,395 pounds less steel, and that he (defendant) should receive a credit of $167.65 because of this change.

Defendant also urges that, while it is true, had plaintiffs executed and completed the contract according to the plans and specifications, they would have been entitled, without reference to the extras claimed by them, to the balance demanded by them under the contract, but that, as a matter of fact, they did not do so, and that he, in order to remedy defective work and complete the contract, had to expend $2,111.17, which he urges should be deducted from the contract price, and sets forth some twenty items, ranging from $.75 to $278, as entitling him to this reduction.

Defendant also urges that there should be deducted from the balance of the contract price certain amounts, aggregating $759.49, which, though agreed upon by him and plaintiffs, the latter has failed to credit him for in accordance with the agreement.

Defendant also urges that plaintiffs are indebted to him in the sum of $1,165, for the reason that they agreed in their contract to complete the work by May 22, 1923, and that, if they did not do so, they would pay him, as liquidated damages, $5 for each day the work remained incompleted and unaccepted after the date mentioned. He urges in this connection that, due to the delays of plaintiffs in executing the work, and those occasioned by having to relet it, the contract was not finally completed and accepted until 233 days after the date mentioned, and that therefore he is entitled to recover from plaintiffs $1,165, as demurrage. He also urges that plaintiffs are indebted to him in the sum of $211.11, the additional amount that it was necessary to pay the architect to supervise the completing of the work, after it was relet.

Defendant then urges that, after the foregoing credits are allowed him, there remains due him by plaintiffs $467.40. This amount defendant claims in reconvention from plaintiffs.

Several materialmen filed liens against the building. Their claims are not before us, and have probably been paid. However, due to the existence of these liens in the beginning of the litigation, the trial judge took the view that the proceeding was one in concurso, and referred this case to a special commissioner to hear the testimony and report his findings and recommendations.

The commissioner found that defendant was entitled to credits amounting to $795.87 on the $3,779.37, sued for by plaintiffs, and that judgment should be rendered in favor of plaintiffs for the balance remaining of $2,983.50, with legal interest thereon from judicial demand. The report of the commissioner's findings was excepted to by defendant, and, after a hearing had, the trial judge approved the findings of the commissioner and rendered judgment in favor of plaintiffs in accordance with the commissioner's suggestions.

The evidence touching the various items in dispute between plaintiffs and defendant is conflicting. Those items involve, with the exception of the claim for demurrage, only questions of fact. Pretermitting for the moment the item of demurrage, we fail to find what we may point out as a manifest error of the commissioner, and hence as a manifest error of the trial judge in adopting his report. Therefore, without attempting to analyze the evidence here, we may say that our conclusion is that the trial judge has done substantial justice between the parties on the items in dispute, which are here being considered, and which include all except the demurrage.

█ As relates to the demurrage, there can be no question that, when plaintiffs' contract was canceled, the work, though nearly completed, was greatly overdue. Plaintiffs attribute the delay to a change in the specifica-

tions, which required the purchase of different material as to size, which it developed could not be obtained without considerable delay, and to uncertainty on the part of the owner and the architect, or conflicting views between them, as to what change, if any, should be made in the specifications to allow additional room for a vestibule, and to other causes. But the contract provided that no delay would be recognized unless the application should be made in writing, and approved by the architect, and application was made only in one instance, and in that it was refused. However, the contract does not contain a provision relieving the owner of the necessity of putting the contractor in default for failure to deliver the work completed within the time specified. Such a failure, when not due to the execution of the contract in a manner not in accordance with the contract, is a passive violation of the contract, and a putting in default is necessary, where not waived, before the demurrage begins to accrue. Davis v. Glenn, 3 La. Ann. 444; Allen v. Wills, 4 La. Ann. 98; Godchaux v. Hyde, 126 La. 190, 52 So. 269.

■ Viewing the partial execution of the contract, in this instance, as a whole, the violation of it was passive; that is, there was a mere failure to complete, and there was not the execution of the work in a manner at variance with the contract. The credits allowed defendant by the trial court, which we have approved, were, with one slight exception, for work which plaintiff had failed to do. The credit allowed for replacing broken slate, we think, when the evidence is properly analyzed, is of this nature, as is also that for tiling. The only thing done, and not corrected by plaintiffs, that partakes of the nature of an active violation of the contract, was the putting in place two baseboards that did not match—a matter which was insignificant, when compared with the whole work, and which hardly could be said to have had the

effect of making the failure to deliver in accordance with the contract an active violation. This case, therefore, in this respect, is unlike Levy v. Schwartz & Bro., 34 La. Ann. 209.

■ Plaintiffs were not put in default until November 21, 1923. In our view defendant is entitled to demurrage at the rate of $5 a day, the amount stipulated, from that date. But demurrage cannot be allowed up to the time the work was finally completed, for the reason that, after defendant, on December 3, 1923, canceled the contract with plaintiffs, the work was not finished in material respects by defendant, as originally contemplated by the plans and specifications, but parts of it were taken out, and the work done on a more extensive scale, as, for instance, plastering that was supposed, under the original plans, to be merely patched, was taken out and entirely new plastering put in its place. These changes required additional time, the exact period of which cannot be computed from the record. However, while the foregoing is so, there is evidence in the record tending to show that, had the contract not been terminated, plaintiffs should have finished the work in a few days after the date of its termination, perhaps within three days thereafter. In view of this fact, we feel safe in allowing defendant demurrage from November 21, 1923, the date upon which plaintiffs were put in default, up to December 7, 1923, the time when the work should have been finished, but, due to the different manner in which defendant finished the work, not beyond that time. This entitles defendant to $75 demurrage, and the judgment appealed from should be amended so as to allow it.

For these reasons, the judgment appealed from is amended by reducing it from $2,983.50 to $2,908.50, and, as thus amended, it is affirmed; appellee to pay the costs of this appeal.

O'NIELL, C. J., takes no part.