154 So. 445

**LOUISIANA FARMS CO. v. YAZOO & M. V. R. CO.**

No. 32167.

March 26, 1934.

Rehearing Denied April 23, 1934.

George Seth Guion, of New Orleans, and Sidney A. Marchand, of Donaldsonville (E. C. Craig, of Chicago, Ill., Chas. N. Burch, H. D. Minor, and Clinton H. McKay, all of Memphis, Tenn., and Lemle, Moreno & Lemle, of New Orleans, of counsel), for appellant.

C. C. Weber, of Donaldsonville, for appellee.

O'NIELL, Chief Justice.

This is a suit for damages for violation of a verbal contract.

The plaintiff is a partnership, composed of D. J. Gay, L. N. Dantzler, and Launnie Ginn, and is engaged in farming on a tract of land belonging to Gay. The defendant's railroad, extending north and south, traverses the farm, which slopes eastward and drains into the railroad ditch paralleling the roadbed, and thence through culverts under the roadbed, and into Bayou Conway, behind the farm, and far away from the railroad. The railroad company found it necessary to widen and strengthen the roadbed by digging a new ditch about ten feet west from the one along the west edge of the railroad embankment and by using the dirt to fill the old ditch and to enlarge the embankment. To do that, of course, required an encroachment of about ten feet upon the farm of the Louisiana Farms Company. The railroad company's supervisor for that section, therefore, called upon Mr. Ginn, who was superintendent for the farms company, and proposed that the farms company should give the additional ten feet of space for the digging of the new ditch and the enlarging of the embankment, and that, in consideration there-

for, the railroad company would dig the new ditch deeper and wider than the old ditch, so as to make the improvement advantageous to the farms company, as well as to the railroad company. It was understood that the proposed work would necessarily impede the drainage of the farm during the progress of the work, but would improve the drainage afterwards. Mr. Ginn's understanding of the agreement was that the railroad company would complete the work and remove all dams or loose dirt from the ends of the farm company's ditches, and from the culverts under the railroad embankment, within thirty days from the time of commencing the work. The supervisor, on the other hand, testified that his agreement in that respect was merely "to do the work entirely to their satisfaction"—meaning to the satisfaction of the farms company. The work was commenced in the beginning of June, but, on account of excessive rainfall, was not completed until the end of September. Meanwhile the farm was flooded with rainwater, and the crops, of cotton, corn, velvet beans and alfalfa hay, were inundated almost continuously, and were completely destroyed. The farms company brought this suit to recover the loss, alleged to be $12,050.

The railroad company filed an exception of no cause or right of action, because the title to the farm, produced in response to a prayer for oyer, showed that the farm belonged to D. J. Gay alone, and not to the farms company. The district judge sustained the exception and dismissed the suit, but, on appeal, the judgment was reversed and the case was remanded to the district court for further proceedings, because the claim of

the farms company was not for damages to the land, but for the loss of the crops, which belonged to the farms company. See Louisiana Farms Company v. Yazoo & M. V. R. Co., 172 La. 569, 134 So. 747.

The railroad company, answering the suit, admitted the digging of the new ditch and the filling of the old one parallel with the railroad, and the enlarging of the roadbed; but averred that the work was a benefit to the farm; that there was no agreement made with regard to damming or stopping up the ditches on the farm; that no such ditch was dammed or stopped up or obstructed by the work; and that the work was performed with the consent and approval of the owner of the farm.

The case was tried by a jury; the result being a verdict for the plaintiff for $4,500. The defendant asked for a new trial, but the judge overruled the motion and gave judgment for the plaintiff for the amount of the verdict. The defendant has appealed from the judgment; and the plaintiff, answering the appeal, prays for an increase of the judgment to $8,442.90, being the cost of planting and cultivating the crops which were destroyed.

The defendant filed in this court another exception of no cause or right of action. This new exception is founded upon the fact that the plaintiff did not allege or prove that a demand for performance of the contract was made in one of the ways prescribed by article 1911 of the Civil Code for putting a party in default in the case of a passive violation of a contract. Article 1933 of the Code provides that, when there is only a passive breach, and not an active breach, of a contract, damages are due only from the time the obligor is put in default; and article 1911 provides that a demand, in order to have the effect of putting the obligor in default, "may be made, either by the commencement of a suit, by a demand in writing, by a protest made by a notary public, or by a verbal requisition made in the presence of two witnesses." But it is well settled that, if the defendant in a suit for damages for an alleged passive violation of a contract denies the alleged obligation, or denies that it was violated, it is not necessary for the plaintiff to allege or to prove that a demand for performance of the alleged obligation was made in one of the forms prescribed by article 1911 of the Civil Code. The reason for that is that it would be inconsistent for one to deny the obligation of a contract, or to deny that he had violated the obligation, and at the same time urge that a proper demand might have brought forth a performance of the obligation on his part. Beck v. Fleitas, 37 La. Ann. 492; Southern Sawmill Co. v. Ducote, 120 La. 1052, 46 So. 20; Johnson v. Levy, 122 La. 118, 47 So. 118, 16 Ann. Cas. 978; Reinach v. Jung, 122 La. 610, 48 So. 124. There is nothing to the contrary in the decisions cited by counsel for the appellant, viz.: Godchaux v. Hyde, 126 La. 187, 52 So. 269; J. H. Garrison & Son v. Sherill Hardwood Lumber Co., 156 La. 147, 100 So. 253; Herman Bros. v. Troxler, 166 La. 587, 117 So. 727.

On the trial of the case on its merits it was shown that the railroad company was under obligation to leave the ditches on the farm unobstructed. The work was to be

done, and in fact was done, by means of plows and scoops, drawn by mules, and was to be finished, and was in fact finally finished, by means of hand shovels or spades. There were 26 ditches on the farm, sloping eastward and emptying the drainage water into the railroad ditch on the west edge of the embankment; and there were four culverts, through which the drainage passed out of the parallel ditch, and under the roadbed, to the ditches on the east side of the railroad, and thence continued eastward to Bayou Conway. It was unavoidable, and was so recognized in the agreement between the parties, that the plowing and scooping out of the new ditch beside the old one along the west edge of the embankment would fill the ends of the 26 farm ditches with loose dirt, and would temporarily prevent the drainage water from going to the culverts. And the thought which was foremost in the minds of the parties to the agreement was that the drainage should not be thus obstructed to a greater extent or for a longer time than was necessary to complete the work of digging the new ditch and filling the old one and enlarging the embankment. Mr. Ginn testified that the agreement was that the work should be completed and all dams or obstructions removed within thirty days from the commencement of the work. The testimony as to the number of teams and implements that were employed in the work, and as to the daily capacity of the equipment, leaves no doubt that the work could have been done in less than thirty days if the weather had been at all favorable. But the rainfall during the months of June, July, and August was exceptionally great; in fact, all of the witnesses testified that the rainfall during that period was unprecedented. And there is no doubt that that is what prevented the completion of the work in the time in which it should have been done. The general rule, stated in article 1933 of the Civil Code, is that one who is hindered by a fortuitous event or an irresistible force from doing what he has contracted to do is not answerable in damages for his failure to fulfill his contract; but an exception to the rule is, as stated in the same article of the Code, that one who is hindered by a fortuitous event or an irresistible force from fulfilling a contract is answerable in damages if he has "expressly or impliedly undertaken the risk of the fortuitous event, or of the irresistible force." Considering that it was on the proposal of the railroad company, and primarily for the railroad company's benefit, that the work was undertaken, the company impliedly assumed the risk of unfavorable weather conditions. In fact, the supervisor who represented the railroad company in the agreement testified: "I told Mr. Ginn and Mr. Gay that this work was to be done entirely satisfactory to them, that they were to be the judges, and that any time anything was not satisfactory to call our attention to it and we'd certainly fix it. * * * I agreed to do anything that they wanted done in the way of taking care of this drainage. I told them we'd start on the north end of the property and continue the work through, and we'd keep the ditches opened during the entire progress of the work, with the exception that when we were working during the day, when the plowing of the ground was going on, there would be some dirt that would probably fall into the

ditches, but that the ditches would be kept cleaned out so that they would have drainage. That was practically all of the agreement we made. * * * The work was to be done entirely to his [Ginn's] satisfaction." The defendant did not plead as a defense that the fulfillment of the contract was hindered by a fortuitous event or an irresistible force, but, on the contrary, pleaded that the contract was fulfilled.

The evidence shows that the work which the railroad company undertook was not completed to the satisfaction of the farms company, or of Mr. Ginn or Mr. Gay. About the end of June the drainage was so badly impeded, and the farm so flooded that Mr. Ginn sent for Mr. Gay, who resided in Biloxi, Miss., and who came and conferred with Mr. Ginn and the supervisor for the railroad company. Meanwhile the supervisor for the railroad company, on the complaint of Mr. Ginn, had stopped the work and was trying to relieve the condition. As a result of the conference with Mr. Gay and Mr. Ginn, and on the assurance of the supervisor for the railroad company that he would avoid obstructing the drainage, he was allowed to go on with the work. But the rains continued, and the work was so retarded thereby that the whole field remained flooded, to the tops of the rows. Meanwhile, as the supervisor for the railroad company admitted, Mr. Ginn was making himself troublesome with his frequent complaints. The supervisor testified that Mr. Ginn's complaint was that the new ditch, along the west side of the railroad embankment, was not deep enough, and not wide enough. Mr. Ginn testified that his complaint always was that the culverts and the ends of the farm ditches, at the railroad company's new ditch, were stopped up with dirt. And the evidence seems to have convinced the jury that there was where the trouble was. The supervisor for the railroad company, in an effort to relieve the situation, cut a ditch from the east side of the roadbed to the rear or east end of the farm, towards Bayou Conway; but even that did not drain the water from the farm, on the west side of the railroad. The land on the east side of the track was used only as a pasture, which, of course, was not injured by the rainwater.

From the evidence in the case, it would be a very arbitrary conclusion on our part to say that the jurors, who lived in the vicinity, and whose verdict was unanimous, and the judge who approved the verdict, were wrong in their conclusion that the loss of the plaintiff's crops was caused, in some measure, by the failure of the railroad company to keep the drainage unobstructed, and would not have been a total loss if the drainage had remained unobstructed. All of the ditches on the farm had been cleaned out and deepened, and were in first-class condition, when the railroad company commenced its work. It does not appear that the plaintiff's drainage system was not as good as that of the other farmers in the neighborhood before the railroad company commenced its work; and two of the neighborhood farmers testified that they made fairly good crops that year, notwithstanding the excessive rainfall. One neighboring farmer, immediately beside the plaintiff's farm, testified that his crop was a complete failure that year; but there was no showing that the plaintiff's drainage system was not better than his before the rail-

road company commenced its work. At any rate, the unanimous verdict of the jury, and its approval by the district judge, are entitled to great deference in a case like this, because the jurors were better acquainted than we are with the weather conditions which prevailed in the vicinity and the effect upon the crops. Our conclusion, therefore, is that the finding of the jury that the defendant is answerable in some measure for the plaintiff's loss should not be set aside.

■ As to the amount of the judgment, there is no doubt that the planting and cultivating of the crops cost the plaintiff $8,442.90; there is no doubt that the crops were well advanced and in first-class condition when the railroad company commenced its work; and no doubt that the crops were a total loss. There was no harvest of the crops at all. The plaintiff planted crops of oats, clover and rape, in the fall, after the crops of cotton, corn and velvet beans and alfalfa were de-stroyed. The fall crops were not harvested, but were inventoried at the end of the year, oats at $787.50, the clover at $300, and the rape at $100. Besides, the plaintiff bought corn and hay, which were inventoried, the corn at $2,250 and the hay at $500, at the end of the year. The total of the inventory of forage and feed on the farm at the end of the year, therefore, was $3,937.50; which, deducted from the expense account of $8,442.90, would leave a net loss of $4,505.40, if the expenses for planting and cultivating the fall crops were included in the expense account of $8,442.90. It may be that the jury was under that impression and that (dealing only in round figures) that is the reason why the net loss was fixed at $4,500. If so, the result is not accurate, because the record shows that the cost of planting and cultivating the fall crops was not included in the expense account of $8,442.90. It is possible that the jury got the result of $4,500 by taking Mr. Ginn's approximation of the cost of planting and cultivating the crops that were destroyed, which, before the figures were produced, he said was approximately $9,000, and by assuming that half of that sum would have been lost because of excessive rains, even if the drainage had not been impaired by the work of the railroad company. We assume, however, that the verdict of $4,500 represents the jury's estimate of the value of the crop immediately before its destruction was commenced, considering the condition and stage of advancement of the crop, and hence considering, merely as an element in the estimate of the value then, the prospective or potential value of the crop, for that seems to be the accepted method of measuring damages for a total destruction of a growing crop. 17 C. J. 887, § 190; Boudreaux v. Thibodeaux, 149 La. 400, 89 So. 250. By whatever method the jury may have calculated the amount of the verdict, there is no evidence that would warrant either an increase or a reduction of the amount allowed.

The judgment is affirmed.

ST. PAUL, J., absent.