REGAN, Judge.
Plaintiff, B innings Construction Company, Inc., instituted this suit against the defendant, the Louisiana Life Insurance Company, endeavoring to recover the sum of $5,968.10, representing the balance due on a building contract, under which plaintiff renovated the interior and exterior of a building owned by defendant at 2107 Dry-ades Street in the City of New Orleans.
The defendant admitted plaintiff had performed the contract; however, it denied that there was any balance due. Then, assuming the position of plaintiff in re-convention, it asserted that plaintiff was indebted unto it for $20,391.46, which is the total of the following claims :
a.) Liquidated damages for failure to timely complete the exterior of the building $ 1,050.00
b.) Liquidated damages for failure to timely complete the interior of the building 18,285.46
c.) Credit for the substitution of obeche plywood for white birch 756.32
d.) Damage to draperies caused by leak in plumbing due to plaintiff’s faulty workmanship 300.00
e.) Cost of repairing plumbing leak 665.00
From a judgment awarding plaintiff the sum of $4,246.78, which recognized the validity of all of defendant’s claims in reconvention other than the two for liquidated damages, the defendant has appealed. The plaintiff answered the appeal, asserting that the trial judge improperly recognized defendant’s claim in reconvention.
The contract which is the subject of this litigation totalled $131,005.70 and the payment to the contractor was $125,037.60, leaving a balance due of $5,968.10. It does not appear that this balance is contested. Defendant, in effect, admits the balance should have been due, but asserts it is more than offset by liquidated damages and credits due under the contract.
The question of paramount importance posed for our consideration by virtue of this appeal is whether the trial judge properly rejected defendant’s claim for liquidated damages.
In view of the fact that the contract contains different conditions relating ' to the renovation of the interior and the exterior of the building, for the sake of simplicity, we shall discuss each separately.
*563 With respect to the exterior work, the pertinent provisions of the building contract, executed on January 22, 1957, read:
“All work on the exterior of the building, including all stone and granite facing, aluminum louvers and trims, ceramic tile panels, aluminum entrances, stairs and stair halls shall be completed before March 18, 1957.”
and
“Should the contractor fail to substantially complete that portion of the work on the exterior of the building and the stairs as stipulated under Article (2) Item (1) on or before March 18, 1957 both parties to the contract mutually agree that the contractor shall pay the Owner as acknowledged liquidated damages the sum of twenty five dollars ($25.00) for each and every day he is delinquent, which amount shall be reported by architect, who will deduct same from any balance due * * *."
It is conceded by both litigants herein that time was of the essence in completion of the exterior of the building and the stairs. The date of March 18, 1957 was the stated deadline since the defendant owner was to host a national insurance convention, scheduled March 18th through the 20th.
Work commenced during the early part of February and shortly thereafter the owner and architect, Edward Tsoi, advised plaintiff that it wished to import a ceramic tile from Italy to be used on the building’s exterior, which was a change from the tile the architect had originally specified. The contractor advised that importing the material may cause a four to six week delay; despite this knowledge the owner still insisted upon its use.
On March 14, 1957, Tsoi inspected the job and thereafter addressed a letter to plaintiff, in which he observed that plaintiff would not complete the exterior work by March 18 as the contract required. He wrote that he intended to deduct liquidated damages of $25 per day for each day the plaintiff failed to complete the renovation thereafter; however, he made this concession :
“It is understood that you will not be penalized for the delay on the ceramic tile panel, since we gave you permission to ship this material from Italy. You will also be given credit for days with inclement weather when no exterior work could properly be done.”
Counsel for defendant asserts that the exterior was not finished until April 29, 1957; however, plaintiff contends it had been finished by March 29, 1957.
Plaintiff’s president, Clem Binnings, testified that the exterior had been substantially completed by March 29th, and his testimony was supported by two subcontractors, Henry Favrot, who did the stone-masonry work, and William Johnson, who painted the plywood paneling in the stair hallways, which, we reiterate for the purpose of clarity, was included in that portion of the contract relating to exterior work.
Defendant bases its assertion that the exterior was not finished until April 29, 1957, upon the testimony of Tsoi, who insists that the lumber wholesaler shipped an inferior grade of paneling, which was returned and a substitute therefor had to be selected. Obeche was substituted for white-birch plywood and Tsoi contends that he did not even see the sample of obeche until April 2, 1957. Tsoi pointed out that the material then had to be ordered, delivered and installed before the paint could' be applied thereto. Therefore, this portion of the exterior contract could not have been completed on March 29th.
We are compelled to conclude that the exterior was completed by March 29, 1957, since the subcontractors not only testified that the work was completed at that time but also furnished invoices which indi *564 cated the jobs had been performed during March of 1957.
Thus, the contractor finished the job eleven days later than the deadline set in the contract and all parties hereto admit that time was of the essence in this instance. Ordinarily, we would be compelled to enforce the penalty clause in the contract, even though the architect neither deducted these damages from his final payment or put plaintiff in default, since our jurisprudence is well settled to the effect that an obligee need not place an obligor in default on a contract before enforcing the penalty clause of a contract where time is of the essence.[1]
However, in this case the evidence preponderates to the effect that the contractor was delayed in performance by the substitution of imported ceramic tile and by inclement weather, and the architect recognized these delays had occurred in his letter of March 14th and waived penalties therefor. Since performance was only eleven days late, we will not impose the liquidated damages upon plaintiff in the absence of proof to establish how many days delay was occasioned by inclement weather and how many by the delay in the shipment of the tile, in view of the fact that defendant has admitted some delay.
Defendant’s claim for the balance of the liquidated damages is predicated upon the assertion that plaintiff breached that part of the contract which specified that the interior would be completely renovated by July 5, 1957. The per diem penalty stipulated for each day late in the contract was %o of 1% of the contract price.
The record reflects that the interior was finally completed on December 5, 1957. At that time the architect accepted the work in its entirety, except for four minor complaints which required correction. The job was formally accepted in May 1958, with one exception, namely, defendant complained of a leak in the plumbing which was installed under plaintiff’s supervision.
Counsel for the plaintiff asserts that the owner and the architect were responsible for its tardy completion; however, we do not think it is necessary to discuss the evidence adduced to prove or disprove that the owner and architect were responsible for the delays, since the owner never placed the contractor in default.
LSA-C.C. Art. 1933 provides in part:
“When the breach has been passive only, damages are due from the time that the debtor has been put in default, * * *»
It is a well settled principle of law that a contractor’s failure to complete a building contract within the time specified therefor constitutes a passive breach thereof.[2] It is equally well settled that the obligee seeking liquidated damages as a result of the late completion must first put the obligor in default.[3] It is only in these instances where the contract expressly states that the expiration of the term assigned for performance constitutes a putting in default that the obligee is relieved from the necessity thereof.[4]
Counsel for defendant, however, persistently maintains that it is entitled to liquidated damages because the contract provided that time was of the essence. He relies upon the following provision, which reads:
“As time of completion will be a consideration of value to the owner, should contractor fail to substantially complete the contract * * *, both parties to the contract mutually agree that *565 ■contractor shall pay owner as acknowledged liquidated damages, one twentieth of one percent * *
■Counsel for defendant argues that the time element was the primary reason that the owner awarded plaintiff the hid; however, the record reveals that the plaintiff was .awarded the contract because his bid was substantially lower than the other three -submitted. It is true, with respect to the •exterior work, both the contract and the ■testimony established that time was of the ■essence, but with respect to the interior, the -evidence fails to substantiate the defendant’s contention. In the case of Williams Lumber Company v. Stewart Gast & Bro., cited supra, the organ of the court ration-alized thus:
“ * * * Whether time is of the essence is not always easily to be determined, and often the answer to the ■question depends not upon the terms of the contract itself but upon extraneous circumstances and facts and upon how the parties themselves looked upon the importance or unimportance of the time element.”
Therefore, we are compelled to conclude that the trial court properly refused to enforce the penalty clause in the contract relating to the completion of the interior work.
Turning our attention to the defendant’s claim for credit emanating from faulty workmanship and damages incurred as a result thereof, we find no error in the trial •court’s allowance of a $665 credit to the defendant for the correction of defective plumbing and in oral argument counsel for the plaintiff has conceded that he failed to successfully remedy the condition and the cost as computed by the defendant in connection with the repair thereof was proper.
Plaintiff also concedes that the draperies were damaged as a result of the leak and admits that a credit is due thereon. However, it asserts that $300 is the full value, thereof and that defendant had agreed prior to the trial to deduct $100 from his claim in exchange for retaining the drapes. The evidence establishes that this concession occurred at a meeting wherein the contractor and the owner were endeavoring to adjust several disputed items, and since their efforts were fruitless and the entire settlement was ultimately abrogated, we must conclude that the defendant is not now bound by his former agreement. Therefore, the trial court’s credit therefor was proper.
Finally we must consider the disputed credit relating to the plywood. The defendant contends that the specifications called for white birch plywood in the stairway area but that obeche plywood was substituted therefor and a quantity of 4,640 square feet was used in connection therewith. The trial court accepted the figures submitted by the defendant to establish the price of both the obeche and white birch and we detect no error in its acceptance thereof. The credit therefor was allowed on this basis:
White birch $315 per thousand sq. ft.
Obeche 187 per thousand sq. ft.
Difference $128 per thousand sq. ft.
In order to obtain the total credit due we have multiplied $128 by 4,640 and conclude therefrom that a credit of $593.92 is due thereon.
Therefore, the judgment in reconvention with respect to the credit for the plywood should be reduced from $756.32 to $593.92, which reduction would decrease the total credit allowed to the defendant from $1721.32 to $1558.92.
For the reasons assigned, the judgment appealed from is amended so as to increase the judgment in favor of plaintiff from $4,246.78 to $4,409.18, and in all other respects, the judgment appealed from is affirmed. All cost of this appeal is to be borne by the defendant.
Amended and affirmed.

. Williams Lumber Company v. Stewart Gast & Bro., La.App., 21 So.2d 773.

. Haffner & Taylor v. Perloff, 174 La. 687, 141 So. 377.

. Herman Bros. v. Troxler, 166 La. 587, 117 So. 727.

. Godchaux v. Hyde, 126 La. 187, 52 So. 269.