COLE, Judge.
This is a claim by the sellers of real estate for the collection of a deposit made by potential buyers of the property who failed to meet a purchasing deadline.
In 1978, Dewey R. Ray and his wife listed their home for sale with Lewis and Associates, Inc., real estate brokers. The property is more particularly described as Lot 120 of Forest Heights Subdivision which is located within East Baton Rouge Parish, Louisiana.
On July 26, 1978, Leandren and Mary Taylor Peeples entered into a purchase agreement with the Rays to buy the property for the price of $45,000.00. According to that agreement, the act of sale was to take place no later than October 1, 1978. The Peeples deposited $500.00 and, in that regard, the purchase agreement provided:
“In the event of default by the purchaser the seller shall have the right, at his option, either to demand specific performance or to retain the deposit as liquidated damages. Either party hereto who fails to comply with the terms of this offer, if accepted, is obligated to pay REALTOR’S fees, attorney fees and all other fees and costs incurred in enforcing collections and damages.”
The buyers had $19,500.00 cash which was to be applied to the purchase price and the agreement was conditioned upon their being able to obtain financing for the remaining $25,500.00. When it became apparent the Peeples would not be able to finalize their financing arrangements by October 1, 1978, they, through their agent, Corrie E. Armstrong, obtained from the Rays an extension of time until November 1, 1978, by depositing an additional $5,000.00. A written agreement was executed by the parties at that time which provided all of the terms and conditions of the prior purchase agreement were to remain unchanged.
When the extension period expired and the Peeples were still unready to finalize the sale, further efforts to do so were abandoned and, on December 18, 1978, the plaintiffs filed suit for forfeiture of the $5,500.00 deposit.
The defendants maintained they fulfilled their obligation under the purchase agreement because they made a good faith effort to obtain financing but were unable to do so by the expiration of the extension period.
Subsequent to-trial on the merits, judgment was rendered in favor of the plaintiffs. The district court determined the defendants had failed to make a good faith effort to secure financing, that timely demands were made upon their agent to close the sale, and that time was of the essence in this contractual situation because the Rays had committed to take ownership of another residence and were relying on the funds from the Peeples sales to comply with that obligation. The court further decided a formal putting in default of the buyers was not necessary but, if it was, that requirement had been met by the actions of the Rays’ agent, Lewis & Associates. We affirm.
The jurisprudence of this state relative to sales agreements conditioned upon obtaining financing is stated in Woods v. Austin, 347 So.2d 897 (La.App. 3d Cir. 1977), as follows:
*1305 “A stipulation in a contract to sell, which makes the sale conditioned upon the purchaser’s ability to obtain a stipulated loan to finance the purchase, is a contract subject to a suspensive condition. It imposes upon the purchaser the duty to make a good faith effort to obtain the loan. Whether he has acted in good faith depends on the facts and circumstances in each case. If the purchaser, through no fault of his own, is unable to obtain the loan, he is released from his obligatipn to purchase and is entitled to the return of his deposit. Treadaway v. Piazza, 156 So.2d 328 (La.App. 4 Cir. 1963); Liuzza v. Panzer, 333 So.2d 689 (La.App. 4 Cir. 1976); Morrison v. Mioton, 163 La. 1065, 113 So. 456 (1927).”
We are persuaded, as was the trial judge, that the defendants here did not make a good faith effort to obtain the required financing. The evidence reflects an application was made by or on behalf of the Peeples with Person-to-Person Financial Center in Baton Rouge, Louisiana, for the borrowing of $12,000.00. Some confusion exists as to the date of that application, as there are some indications it could have been made on October 6, 1978, or that it may have been made as late as November 7, 1978. That application was denied by that lender due to insufficient information and the applicants were so notified by mail on November 8th.
Additionally, Louis L. Eames, the executive vice-president and managing officer of the First Federal Savings and Loan Association was also visited by the Peeples’ agent, Corrie E. Armstrong, relative to a loan for this purchase. That meeting was on October 31, 1978, just one day prior to the deadline called for by the extension which the sellers had granted. The application submitted did not contain sufficient information to be processed and, according to Eames, if it had been complete, at least a week to ten days would have been required to process it.
There is some evidence the defendants were anticipating the proceeds of a lawsuit would come into their possession during this period of time and they were hopeful the amount to be financed would be lessened considerably. Nevertheless, we find that neither of the applications made were serious attempts to comply with the terms of the agreement.
The appellants also contend the ap-pellees’ claim must be rejected because the Peeples were not put in default according to law. The district court, however, correctly analyzed this issue as it found that time was of the essence in this agreement and a formal putting in default is not necessary where that condition exists. The plaintiffs had agreed to purchase another residence on November 10, 1978 and they were relying on the proceeds of the Peeples sale to consummate that transaction. The Peeples’ agent was well aware of that fact and knew and admitted a timely closing was necessary. At page 144 of the transcript the agent testified:
“Q. You were advised at that time?
A. Over the phone, yes, sir. He could not get the necessary information from the social security office in Detroit. And time was of the essence—
Q. You say time was of the essence?
A. I felt like it was.”
Where time is of the essence of a contract, a formal putting in default is not required. In Brooks v. Neyrey, 167 So.2d 400 (La.App. 4th Cir. 1964), the court noted:
“It is well settled that a contractor’s failure to complete a building contract within the time specified in the contract constitutes merely a passive breach thereof and that a putting in default is a condition precedent to the recovery of liquidated damages for the contractor’s delay in completion unless by the terms of the contract a putting in default is waived or unless by stipulation in the contract or by the nature and circumstances of the agreement time is of the essence thereof, or unless a putting in default is excused by some act of the obligor which would render it a vain and useless thing. See Haffner & Taylor v. *1306 Perloff, 174 La. 687, 141 So. 377; Herman Bros. v. Troxler, 166 La. 587, 117 So. 727Binnings Construction Company, Inc. v. Louisiana Life Insurance Company, La.App., 139 So.2d 561, 1 Loyola Law Review 127.” (Emphasis Added.)
Therefore, for the reasons set out above, the judgment of the district court is affirmed, all costs of this appeal to be paid by the appellants.
AFFIRMED.