499 So.2d 595 (1986)
Rene TAYLOR
v.
Carolyn W. ROY, Burnett J. Roy and Merrill Lynch Realty.
No. 86-CA-383.
Court of Appeal of Louisiana, Fifth Circuit.
December 8, 1986.
Rehearing Denied January 16, 1987.
Writ Denied February 20, 1987.
*596 Wayne H. Scheuermann, Metairie, for plaintiff-appellee.
Helen Cheramie, Kenner, for defendant-appellee.
Anthony S. Taormina, Metairie, for defendants-appellants.
Before GAUDIN, DUFRESNE and GOTHARD, JJ.
DUFRESNE, Judge.
This is an appeal by Carolyn Roy and Burnett Roy, defendants-appellants, from an adverse judgment in a suit alleging breach of an agreement to purchase a house, and consequent forfeiture of the deposit. Because we find no error in the trial court's finding that the agreement was valid and that the Roys breached that agreement; we affirm.
The property in question was owned by Rene' Taylor and her mother, Alice Thompson, plaintiffs-appellees. On March 27, 1984, Taylor signed an agreement to sell the house to the Roys. Mrs. Roy, a real estate agent, was acting on behalf of herself and her husband in negotiating the contract and was to receive a realtor's commission on the sale. The contract specified that, time being of the essence, the sale would be passed before the Roys' notary on or before June 15, 1984. It also recited that the Roys would make a good faith loan application within ten days of the signing, and that if they were unable to secure a loan commitment within 45 days of signing, the agreement would be void.
It appears that there was some confusion between Helen Cheramie, Taylor's real estate agent, and the Roys in regard to delivery of papers needed by the Roys to make a loan application. However, those papers were received by the Roys on April 7, 1984. On May 9, the Roys made a loan application with French Market Homestead. That loan was approved on June 15, 1984, the date of closing recited in the contract.
In the meanwhile, Taylor informed her mother that she needed her power of attorney to conclude the sale. A power of attorney was duly executed on April 13, and mailed to Taylor who received it within a few days.
Sometime in early June, a question arose as to whether certain problems with the loan application could be resolved in time for a closing on June 15. On June 14, Cheramie was asked by the Roys if an extension of the closing could be arranged. Cheramie called Taylor, who expressed dissatisfaction with granting an extension, and this information was passed on to the Roys. The following day Mrs. Roy called the homestead and was told that the loan had been approved, whereupon she advised the lender to put everything on hold because of the extension problem. A little *597 later Roy was informed by Cheramie that Taylor had agreed to a six day extension on the closing, and Cheramie offered to bring an extension form to the Roys home for them to sign it. This was not done, however, because Mrs. Roy was leaving town that Friday afternoon and stated that she didn't have time to sign the document. Later that afternoon, Taylor did sign the six day extension.
The record discloses that during the six day extension the Roys did nothing to revive the loan process or have any closing papers prepared. On June 29, Taylor's attorney sent a letter to the Roys stating that she was ready, willing and able to pass the act of sale. Three days later, having had no response to the letter, Taylor filed the present suit for forfeiture of the deposit and attorney fees. Her mother later joined the suit as a plaintiff.
The trial court determined that the Roys had breached the contract in failing to sign a reasonable extension, and further that their testimony that they were always ready, able and willing to go to an act of sale was not borne out by the facts of the case. He therefore awarded plaintiffs the $6,800 deposit, and $3,500 in attorney fees. The Roys now appeal.
They first allege that the agreement to sell was void ab initio because it was not signed by Alice Thompson, a co-owner of the property. This allegation is without merit. The law is clear that a contract entered into by an agent without authority to act is valid when ratified subsequently by the principal, if this ratification is made before the other party dissents to the agreement. La.Civ.Code art. 1950 (cf. prior art. 1840); Sanders v. Rudd, 427 So.2d 1271 (La.App. 2nd Cir. 1983). Defendants further urge that it was error to permit extrinsic or parol evidence to prove ratification. We reject this allegation as well, first because the power of attorney produced at trial was not parol evidence. Second, although extrinsic to the contract, if the power of attorney were held inadmissable, there would be no way to prove the very ratification needed to validate a contract pursuant to the Civil Code. Rebman v. Reed, 286 So.2d 341 (La.1973).
Defendants next urge that there was no putting in default by tender of title, and therefore plaintiffs cannot recover. We reject this contention as well. When a contract specifies that time is of the essence no putting in default is necessary, Ray v. Peeples, 387 So.2d 1303 (La.App. 1st Cir.1980). Similarly, when a party by words or acts has announced that he will not honor an agreement, the other party is not required to tender performance because to do so would be a useless act, Liuzza v. Panzer, 333 So.2d 689 (La.App. 4th Cir.1976). It has also been held that where the contract provides that the defendant's notary is to pass the sale, it would be impossible for the plaintiff to make a formal tender, Morrison v. Fineran, 397 So.2d 838 (La.App. 4th Cir.1981).
In the present case, all three of the above rules are applicable. The contract specified that time was of the essence, and that the sale would be passed by defendants' notary. The Roys informed Taylor, through Cheramie, that they could not go to sale on June 15, requested and received an extension which they then failed to sign, and stopped further processing on the loan. In these circumstances, tender of title on June 15 would have been a vain and useless act.
In this same regard, the defendants admit that there was a breach of the agreement in their failure to make timely application for the loan. They assert that this breach was merely passive and therefore a putting in default on that ground was required. The above cited cases, as well as Brooks v. Neyray, 167 So.2d 400 (La.App. 4th Cir.1964) are against this proposition. However, in this court's opinion, it was this admitted breach in making untimely application for the loan that lies at the heart of the case. The contract provided that if timely application were made and no loan commitment was secured within 45 days, the agreement would be void. This provision protected the buyers from any unforseen delays in the loan application process not occasioned by their own acts. In failing *598 to make application until May 9th, the Roys surrendered the protections of this clause. Moreover, the facts are clear that Taylor, in signing the extension, made a good faith effort to conclude the sale, even though a breach had already occurred. Although the Roys contend that the six day proffered extension would not have given them time to conclude the sale, they did nothing during that time to move the matter forward. And even without a formal extension, Taylor was willing to conclude the sale as late as June 29, as evidenced by her attorney's letter to the Roys. In these circumstances, we find that the Roys breached the agreement, and were properly case in judgment for the amount of the deposit.
Next, the Roys contend that Helen Cheramie was responsible for the problem that arose here. We find nothing in the record that would substantiate this assertion. Mrs. Roy was her and her husband's real estate agent, and was to receive a commission on this sale. She participated in negotiations for the contract and knew all of the time constraints in the document. It was the Roys' obligation to comply with these time limits, and they simply did not do so.
For the foregoing reasons, the judgment of the trial court is hereby affirmed.
AFFIRMED.