194 So.2d 139 (1966)
Donald BOLLINGER, Plaintiff-Appellee,
v.
REPUBLIC PETROLEUM CORPORATION, Defendant-Appellant.
No. 6835.
Court of Appeal of Louisiana, First Circuit.
December 28, 1966.
Rehearing Denied February 6, 1967.
Writ Refused March 27, 1967.
C. Ellis Henican, of Henican, James & Cleveland, Steeg & Shushan, New Orleans, Peltier & Peltier, Thibodaux, Sehrt, Boyle & Wheeler, New Orleans, for appellant.
Victor A. Sachse, of Breazeale, Sachse & Wilson, Paul M. Hebert, Baton Rouge, Johnny X. Allemand, Thibodaux, for appellee.
Before LANDRY, ELLIS and BAILES, JJ.
BAILES, Judge.
This is a suit to cancel an oil, gas and mineral lease granted by plaintiff to Louis J. Roussel and by him assigned to defendant. The property affected by this lease is located on Bayou Lafourche, about 26 miles below the town of Thibodaux. It measures two arpents in width on Bayou Lafourche by a depth of 40 arpents. The date of the lease is April 21, 1954. It was granted as a top lease and became effective and enforceable between the parties upon the cancellation of the lease previously granted by this same plaintiff to The Texas Company. The cancellation of the latter lease was by judgment of the Supreme Court of this State rendered in the case styled Bollinger v. Texas Company et al. (1957) 232 La. 637, 95 So.2d 132.
A companion to the instant suit is that of Melancon v. Republic Petroleum Corporation, La.App., 194 So.2d 144. These *140 two suits were consolidated for trial purposes in the district court and for argument in this court. The issues are identical and the reasons for judgment assigned in the instant case will be controlling and applicable to the companion suit; however, separate judgments will be rendered in each case.
In his original petition which was filed on February 24, 1964, the plaintiff alleged, as a basis for this action that on the property affected by the subject lease either Louis J. Roussel and/or Republic Petroleum Corporation drilled a well designated as Melancon Bollinger Well Unit No. 2; that this well, according to the report of the defendant to the Conservation Commission of this state was logged on December 18, 1959, and completed in due course and that the well was then shut in as a gas well capable of production; that the well is and since June 1, 1963, or earlier, has been capable of producing gas and distillate in paying quantities but has been shut in; and that, while the terms of the lease require the payment by the defendant (the lessees) of shut in royalties, defendant has not paid any shut in gas well royalty; and further plaintiff alleges other royalty is due him on a monthly basis, for oil, gas and other hydrocarbons which have been produced from the said property and from land with which this property is unitized, however, no royalty payment has been made to him since November, 1963.
The plaintiff filed a first and a second supplemental and amending petition which included certain additional persons as party defendants nominally, however, the issue as set forth above was not changed or varied thereby.
The first responsive pleading filed by the defendant was an exception of prematurity based on the failure of the plaintiff to give the defendant notice of an alleged breach of the lease. The notice and the requirement thereof will be discussed infra. Subsequently, defendant filed its original answer wherein it admitted it had paid no shut in royalties, and also pleaded that plaintiff was not entitled to such payments by reason of the legal effect of a certain "Agreement of Compromise and Transaction and Release." Additionally, defendant pleaded the lack of notice by plaintiff to it of an alleged breach of the lease, this being the same ground urged in its exception of prematurity. Further, defendant answered plaintiff's allegation of failure on its part to pay other royalty due on oil produced from plaintiff's land by alleging plaintiff had received certain overpayments of royalty prior to November, 1963, and the payment was suspended in November, 1963, in order for defendant to recoup this overpayment. Defendant filed a supplemental and amended answer wherein, alternatively, it pleaded that if the court should adjudge a cancellation of the lease, then it should be cancelled only on such portion of the subject property not covered by a well or a unit of a well.
After trial in the district court, the trial judge ruled that "defendant was obligated to pay shut-in royalties and, having failed and refused to do so, the lease will be cancelled in entirety." This ruling was made the judgment of the district court. From this adverse judgment, defendant appealed.
For a better understanding of the discussion of the facts, the pleadings and contentions of the parties, we deem it advisable to briefly relate certain background information and facts leading up to the present litigation between the parties hereto. As was stated supra, the lease which forms the basis for this suit was granted by plaintiff to Louis J. Roussel as a top lease. There was at the time a lease in existence on this property in favor of The Texas Company, as lessee. This top lease became operative and effective upon the judicially decreed cancellation of the lease granted The Texas Company. The reasons for this cancellation are set forth in Melancon v. Texas Company et al. infra.
On the basis of certain alleged violations of the mineral lease from plaintiff to *141 Roussel, which had been assigned to defendant, plaintiff instituted, on February 1, 1960, an action to cancel the lease. This action was terminated, effective January 1, 1963, by what was denominated an "Agreement of Compromise and Transaction and Release" and thereunder defendant continued and was maintained in its relationship to plaintiff as the lessee within the same terms and conditions of the said lease as originally confected. Although the parties, in their briefs, have made further reference to this agreement, for the purposes of this opinion no fuller or further reference need be made thereto.
Prior to the time the parties hereto entered into this compromise agreement, defendant logged the gas well, about which the disputed royalty payments are involved, on December 18, 1959. Effective June 1, 1963, as a result of a joint application therefor by defendant and plaintiff, the Louisiana Conservation Commission unitized this gas well under Commission Order 280-J, and designated Texaco, Inc., as operator.
The provisions of the lease entered into between plaintiff and Louis J. Roussel, and assigned to defendant, which we deem pertinent to this discussion and decision are the following:
Paragraph (3)
"The royalties reserved by Lessor, and which shall be paid by Lessee, are, except as otherwise provided herein:

* * * * * *
"(d) On all other minerals mined and marketed, one-eight (1/8) of the current market price at the wells or mine. For any period or periods when, after thirty (30) days following discovery of gas or distillate on the leased premises, such product is not being sold due to lack of a market and is not being used off the leased premises or in the manufacture of gasoline or other product, and for that reason the well or wells are shut in, lessee shall pay as advance royalty for the shut-in well or wells an amount per well as set forth in paragraph 4(e) hereof and pro rata for any lesser period. Said advance royalty shall be payable within thirty (30) days after the shutting-in of the well or wells. Under such circumstances, it will be considered that gas or distillate is being produced, but such gas well cannot be shut-in for a period longer than two (2) consecutive years. Lessor shall have the privilege at his risk and expense of using gas with reasonable efficiency from any well on the leased premises, for the purposes on the leased premises or on lands unitized therewith.

* * * * * *
"(4) (e) For the purpose of calculating shut-in gas royalty payments, shut-in royalties shall be calculated at $50.00 per acre per well per year (an arpent is deemed to be an acre). Payment may be made either directly to lessor or to his depositary bank, Raceland Bank & Trust Company, Lockport Branch, in accordance with paragraph 3(d) hereof.

* * * * * *
"(9) In the event Lessor considers that Lessee has failed to comply with one or more of its obligations hereunder, either expressed or implied, Lessor shall notify Lessee in writing setting out specifically in what respects Lessor claims Lessee has breached this lease. The service of such notice and the lapse of thirty (30) days without Lessee's meeting or commencing to meet the alleged breaches shall be a condition precedent to such action by Lessor on this lease. If within thirty (30) days after receipt of such notice Lessee shall meet or commence to meet the breaches alleged by Lessor, Lessee shall not be deemed in default hereunder. Neither the doing by Lessee of any acts aimed to meet all or any of the alleged breaches, nor its failure so to act, shall be deemed an admission or presumption that Lessee has failed to perform any of its obligations hereunder."
In its original brief, defendant has assigned seven specifications of error of the *142 trial court. We believe it actually would add nothing to this opinion to detail these assigned errors, except insofar as these are applicable to this opinion. We find that our decision must rest on the requirement of notice provided for in paragraph (9) of the lease, or, more correctly stated, the lack of notice. Defendant's complaint of error in this respect is that it was error for the trial judge to hold that it was unnecessary for the plaintiff to give defendant any notice of default; and that if notice of default was necessary the mere filing of the suit constituted such a notice.
We find the trial judge did err in failing to hold that plaintiff was required to give defendant (lessee) this notice. In his reasons for judgment, he stated:
"* * *
"Defendant is actually asking that the plaintiffs herein do a vain and useless thing. The lessee, as stated in its brief, has taken the consistent position that shut-in royalties were not due and at the same time complains that demand for the performance of the contract was not made. In Louisiana Farms Co. v. M. V. R. Co. 170 La. 539, 154 So. pp. 445, 446, (sic) (the correct style and citation being, Louisiana Farms Co. v. Yazoo & M. V. R. Co. (1934) 179 La. 539, 154 So. 445) the Court had cited Article 1911 RCC to the effect that a demand `may be made, (either) by the commencement of a suit', and had decided that if the suit is filed and that the defendant `denies the alleged obligation, or denies that it was violated, it is not necessary for the plaintiff to allege or to prove that a demand for performance of the alleged obligation was made * * *'. This rule is applicable here. After demand was made by filing of these suits no payment of shut-in royalties tendered and defendant took the position that none were due.
"`(4) The plaintiffs, by their own actions, are fully estopped from claiming shut-in royalties.'
"Demand for cancellation of this lease was made by the plaintiff by the filing of these suits. Defendant contends that shut-in royalties are not due."
The defendant's position on the requirement of notice, which admittedly the plaintiff did not give, is based on the express provisions of paragraph (9) of the lease quoted supra. The contract between the parties provides "the service of such notice and the lapse of thirty days * * * shall be a condition precedent to such action by lessor on this lease." Defendant argues that this notice and the thirty day waiting period is an indispensable requisite or condition for the institution of this suit.
Defendant relies on the case of Fawvor v. United States Oil of Louisiana, Inc., (La.App.1964) 162 So.2d 602, which holds with reference to the plaintiff-lessor urging failure on the part of the lessee to operate as a reasonable and prudent operator that:
"(5) A motion to strike this contention was sustained by the trial judge. Under Paragraph 11 of the lease, if the lessor at any time considers that operations are not being conducted in compliance with the lease, the lessor is required to notify the lessee in writing of the facts relied upon as constituting a breach and the lessee, if legally required to conduct operations in order to maintain the lease in force, has 60 days after receipt of such notice to commence operations to comply with the requirements of the lease. There was no allegation that such notice had been given. * * *.
"For the above reasons, we conclude that the trial judge was correct in granting the motion to strike this contention as a ground for cancellation."
Defendant also cites the case of Billeaud Planters, Inc. v. Union Oil Co. of Cal. (D.C.1956) 144 F.Supp. 564, which was a suit to cancel a lease. Therein the court, in commenting on the effectiveness of a *143 requirement of notice contained in the lease agreement, stated:
"[7] (6) Unless excused or waived, conditions precedent to the maintenance of an action, arising from a lease agreement, must ordinarily be performed or complied with before the action may be instituted, and damages are due only after notice given and demand made in conformity with the provision therefor." This case was affirmed by the Fifth Circuit Court of Appeal in 245 F.2d 14 (1957).
Defendant argues that these notice clauses have been uniformly recognized as enforceable under our jurisprudence, and cites the case of Vance v. Hurley, (1949) 215 La. 805, 41 So.2d 724, in which our Supreme Court refused to cancel a mineral lease where the lessor filed suit without giving the contractual 60-day notice.
Further, defendant argues, as there was nothing illegal or immoral in the requirement of notice, the agreement between the parties became the "law of the case."
Plaintiff counters the argument of the defendant by taking the position that these notice clauses are clearly intended to cover only matter about which there can be reasonable doubt as to the lessee's obligation; that they have no application to matters as to which there can be (no) doubt such as the obligation to pay royalty. Plaintiff relies on the case of Logan v. Blaxton (La. App.1954) 71 So.2d 675. In this cited case, the court found that the lease between the parties had terminated and its provisions as to notice were no longer controlling or obligatory on the contracting parties.
Plaintiff also relies on LSA-C.C. Article 2712, which provides: "The lessee may be expelled from the property if he fails to pay the rent when it becomes due." However, this right to expel must be exercised in the manner and method provided for by procedural law.
Plaintiff further relies on Melancon v. Texas Company (1956) 230 La. 593, 89 So.2d 135; Bollinger v. Texas Company (1957) 232 La. 637, 95 So.2d 132; Bailey v. Meadows (La.App.1961) 130 So.2d 501; and Pierce v. Atlantic Refining Company (La.App.1962) 140 So.2d 19, as authority for their contention that no notice is required before filing suit for cancellation of the lease. The question of necessity of notice, as a condition of the lease agreement or contract between the parties was not discussed, and from the published opinion in those cases we find no reference to a provision for notice in the leases. At any rate, it was not passed on by the court in any of these cited cases.
The case of Louisiana Farms Co. v. Yazoo, M. V. R. Co., supra, is not apropos to the instant case. The cases are clearly distinguishable on the facts. In this cited case the verbal contract between the parties contained no condition precedent to filing suit for the giving of notice of demand for performance of the obligation. In the absence of a provision for notice, LSA-C.C.1911 was correctly invoked as determinative of the question
We believe it can not be properly said that the giving of notice and the observance of the thirty day waiting period would be a "vain and useless thing." We are not in a position to definitively determine what the action of the defendant would have been had the conditions precedent of notice and delay been properly complied with by plaintiff.
We find that the requirement of notice to the lessee and the thirty day waiting period is a valid and binding condition precedent to institution of suit for cancellation of the lease in question. It is our opinion that if plaintiff, as lessor, considered and determined to his own satisfaction that the defendant, as lessee, was not complying with any condition or provision of the lease agreement, he, the plaintiff, should have complied with the requirements of paragraph (9) quoted supra. This the plaintiff failed to do; therefore, his demands must be rejected.
*144 For the foregoing reasons, the judgment of the trial court is reversed, and there is judgment herein rejecting the demands of the plaintiff, at his costs.
Reversed.