AYRES, Judge.
By this action plaintiff seeks to have decreed null and void a series of three oil, gas and mineral leases and, because of their nullity, to have them canceled and erased from the public records. The basis of this action is defendants’ failure to pay royalty as specified in the leases.
Plaintiff is the owner of one-half the minerals under, and which may be produced from, a described 282.54-acre tract of land in the Red River-Bull Bayou Field of Red River Parish, which interest was acquired subject to the aforesaid leases executed by plaintiff’s predecessors in title. The land under which plaintiff owns the aforesaid minerals is designated by an order of the Department of Conservation as Tract 13 of the aforesaid oil field. Under the order, defendant Sun Oil Company is designated as operator and is producing oil from the lands covered by the order. Plaintiff was paid royalties due him under the leases to January 31, 1969, since when, however, no further royalty payments have been made.
Defendants, in addition to Sun Oil Company, as operator of the unit, are certain named lessees, sublessees, and/or assigns under the aforesaid leases.
Under dates of February 4 and 6, 1970, as to Sun Oil Company, and under date of March 3, 1970, as to Anthony Oil Company and Morgan W. Walker, demands were made by plaintiff for a cancellation of the leases and their erasure from the public records because of the defendants’ failure to pay royalties. No demand was made upon the remaining defendants. Sun Oil Company responded to plaintiff’s request by executing a partial release dated February 11, 1970. No response was made by any other defendant. These demands were, as already noted, for a cancellation of the leases and not for payment of royalties. Nevertheless, on March 4, 1970, after receipt of these demands, Sun Oil Company issued and forwarded to plaintiff’s attorney its check in the sum of $846.16, representing the proceeds of production it had sold for plaintiff’s account from February 1, 1969, through January, 1970. This tender was refused and the check was returned, as were subsequent tenders. This action was instituted August 18, 1970.
The matter is before us on plaintiff’s appeal from a judgment sustaining defendants’ pleas of prematurity. These pleas are predicated upon the fact that plaintiff did not give defendants notice that their operations were not being conducted in compliance with the terms of the leases, which notice, it is claimed, is prerequisite to the institution and maintenance of this action. These pleas are based upon identi *661 cal provisions of the three leases which recite that:
" * * * in the event lessor considers that operations are not being conducted in compliance with this contract, lessee shall be notified in writing of the facts relied upon as constituting a breach hereof and lessee shall have sixty (60) days after receipt of such notice to comply with the obligations imposed by virtue of this instrument.” (Emphasis supplied.)
In a recent case, Bouterie et al. v. Kleinpeter et al., 258 La. 605, 247 So.2d 548, the Supreme Court, in reviewing, under certio-rari, the decision of the First Circuit Court of Appeal (234 So.2d 812 [1970]), had before it for interpretation a similar provision in a similar lease. The recitals of the clause there under consideration and referred to as Paragraph 11 are:
“In the event that Lessor at any time considers that operations are not being conducted in compliance with this lease, Lessor shall notify Lessee in writing of the facts relied upon as constituting a breach hereof, and Lessee, if legally required to conduct operations in order to maintain the lease in force, shall have sixty (60) days after receipt of such notice in which to commence the necessary operations to comply with the requirements hereof.” (Emphasis supplied.)
After a thorough and detailed analysis of the many and varied provisions of the lease in the cited case relating to operations under the terms of the lease, Mr. Associate Justice Summers, for the court, pointed out:
“Paragraph 11 [the default clause of the lease] refers to ‘operations' which are not ‘conducted3 in compliance zmth the lease, and to a situation where lessee is legally required to ‘conduct operations.3 Where these situations exist, lessee is given sixty days after written notice to ‘commence the necessary operations’ to comply with the requirements of the lease. Considering Paragraph 11 in the context of the lease, with particular reference to the use of the word ‘operations’ as it occurs throughout the text, it is apparent that Paragraph 11 does not contemplate, either by its express terms or by implication, that lessor should give written notice to lessee of failure to pay royalties and allow sixty days to comply before suit can be instituted for cancellation.
“Payment of royalties is not an ‘operation conducted’ by lessees; nor is it correct to say that the renewal of the obligation to pay royalties is the same as saying, 'commence the necessary operations’ as those terms are used in Paragraph 11." (Emphasis supplied.)
In reviewing the jurisprudence applicable to the question presented there, the same question as now before us, the court further pointed out that:
“In this State we have likened the payment of royalties to rent. Melancon v. Texas Company, 230 La. 593, 89 So.2d 135 (1956); Milling v. Collector of Revenue, 220 La. 773, 57 So.2d 679 (1952) ; and Logan v. State Gravel Co., 158 La. 105, 103 So. 526 (1925). And the cases have recognized that the codal provisions applicable to ordinary leases must be applied to oil and gas leases. Melancon v. Texas Co., supra; Coyle v. North American Oil Consolidated, 201 La. 99, 9 So.2d 473 (1942); Tyson v. Surf Oil Co., 195 La. 248, 196 So. 336 (1940).
“The pertinent provisions of the Civil Code concerning leases provide that ‘The lessee is bound: * * * To pay the rent at the terms agreed on.3, Article 2710, and if he fails to pay the rent when due, he ‘may be expelled from the propertyArticle 2712.
“Courts have, moreover, been substantially unanimous in holding that if the lessee fails to pay or tender the rental on or before the due date, the lease terminates automatically regardless of the fact *662 that subsequent to the due date the lessee may tender the rental payment. Johnson v. Smallenberger, 237 La. 11, 110 So.2d 119 (1959); Clingman v. Devonian Oil Co., 188 La. 310, 177 So. 59 (1937); 3 Williams, Oil and Gas Law, § 606.2 (1969).
“Where royalties are concerned, since no stipulated date for payment is set, the jurisprudence is to the effect that failure to pay production royalties for any appreciable length of time without justification amounts to an active breach which terminates the lease without the necessity of putting in default. Bollinger v. Texas Co., 232 La. 637, 95 So.2d 132 (1957); Melancon v. Texas Co., 230 La. 593, 89 So.2d 135 (1956); Sellers v. Continental Oil Co., 168 So.2d 435 (La. App.1964); Pierce v. Atlantic Refining Co., 140 So.2d 19 (La.App.1962), cert. denied; and Bailey v. Meadows, 130 So. 2d 501 (La.App.1961), cert, denied.
“In this and similar oil leases, lessee may escape termination of his lease by paying rentals or paying royalties. He may escape forfeiture by conducting operations. It is with reference to the latter method of maintaining the lease that Paragraph 11 deals. Such a notice provision is understandably included in the lease because ‘operations’ involve such varied activity, impracticable of precise description, which in method or scope may or may not meet acceptable standards. For these reasons lessee is given an opportunity by this provision to correct failings and avoid a drastic consequence of an inadvertent breach of his obligations before the lease is forfeited. 2 Summers, Oil and Gas § 416 (1959); 2 Kuntz, Oil and Gas § 26.13(e) (1962).” (Emphasis supplied.)
The court cited many examples of operations and concluded that:
“As used in the lease, the word ‘operations’ contemplates drilling or reworking the wells and use of the surface of the land for all purposes incident to the exploration for and production, ownership, possession and transportation of minerals; the exercise of the right of ingress and egress to and from the land, including the right to construct, maintain and use roads and/or canals; the right to remove from the leased land any property placed by lessee thereon; the right to draw and remove casing from wells drilled by lessee on the leased land; and other like activity.” (Emphasis supplied.)
It was further pointed out by the court that while drilling and reworking wells and other similar activities have often been considered “operations” in oil and gas leases, the nonpayment of royalties has never been considered a failure to “conduct operations." (Emphasis supplied.) In this connection, we find in the court’s opinion this appropriate observation:
“ * * * there is no sound reason to make the express obligation to pay rentals or royalties subject to a notice of default clause. Brumby, Negotiations from Lessor’s Viewpoint, L.S.U. Seventh Annual Institute on Mineral Law 45 (1960). Provisions similar to Paragraph 11 have been considered applicable to nonperformance of lease provisions which bring about a forfeiture, as distinguished from nonpayment of rentals and royalties or expiration of the lease term without production which bring about a termination of the lease. 2 Kuntz, Oil & Gas § 26.-13(e) (1962). It is this usage which is relevant to the problem before us. Usage of a term in the oil and gas industry is more persuasive in determining its meaning than dictionary definitions. La.Civil Code arts. 1946, 1947. Thus words in the contract are not necessarily their detached meaning as defined in dictionaries. 2 Kuntz, Oil and Gas § 19.10 (1962).
“We hold, therefore, that the term ‘operations’ as used in Paragraph 11 of the leases does not refer to the nonpayment or untimely payment of royalties." (Emphasis supplied.)
*663 Defendants here, as in the Bouterie case, relied heavily upon the pronouncements in Bollinger v. Republic Petroleum Corporation, 194 So.2d 139 (La.App., 1st Cir. 1966 —cert. denied). In the Bouterie case, a clear distinction in the default clause was pointed out from that in the Bollinger case. Obviously and clearly, the distinction made there is equally applicable to the default clause in the instant case.
We are not unmindful of the slight difference in language of the concluding portion of the default clauses in the leases involved here from that concerned in the Bouterie case. For instance, the default clause in the Bouterie case concludes: “ * * * Lessee * * * shall have sixty (60) days after receipt of such notice in which to commence the necessary operations to comply with the requirements hereof," whereas the clause in the instant case concludes: “ * * * lessee shall have sixty (60) days after receipt of such notice to comply with the obligations imposed by virtue of this instrument.” (Emphasis supplied.) The language of the latter clause refers to “operations” that are not being conducted in compliance with that contract. Therefore, the obligations referred to are such as relate to operations contemplated by the lease and have no reference to the obligations with respect to the payment of rentals or royalties which are not even mentioned in the default clause of the lease.
Therefore, we reach the conclusion here, as was reached by the Supreme Court in Bouterie v. Kleinpeter, supra, that the default clause required no notice of or demand for the payment of royalties; hence that the making of such a demand and the allowance of a delay for compliance therewith were unnecessary and did not constitute a prerequisite to the institution of this action.
Defendants contend that the Bouterie case is distinguishable from the instant case because in Bouterie the court was dealing with nonpayment of royalties on production of gas whereas here we are dealing with production of oil. Defendants point out that in the case of gas production, the leases provide for payment of a monetary royalty but in the case of oil production, the leases provide for a royalty of one-eighth of the oil produced and saved, in kind, the oil to be delivered at the well in tanks provided by lessor, or to the credit of lessor into the pipeline to which the wells are connected, or lessee may from time to time purchase any royalty oil in its possession at the market price prevailing for the field where produced. Thus, defendants argue, a distinction should be made between royalty payable for gas and royalty payable for oil because in the case of oil the lessor is actually the owner of one-eighth of the oil produced and the handling of the royalty oil involves actual and physical “operations” within the meaning of the default clause.
This is, in our opinion, a distinction without a difference and of no importance or significance. Bouterie has squarely held that “operations” as used in the notice clause do not include payment of royalty. All of the reasons supporting the decision apply equally to payment of royalty on oil as well as to payment of royalty on gas. The manner of payment is not significant.
Second, the record in this case shows that a practice existed between the parties under authority of the leases that royalty on oil was to be paid in money and not in kind. In fact, in making the tenders heretofore referred to, defendant Sun Oil Company forwarded its checks representing the proceeds of oil production for the period beginning February 1, 1969, and continuing through January, 1970, sold for plaintiff’s account. Copies of correspondence introduced and made a part of this record evidence this fact. Whether these were timely tenders or, if untimely, justification existed for the delay are matters not so far *664 established by the record nor with which we are presently concerned. Questions relative thereto may be resolved on remand.
For the reasons assigned, the judgment appealed is annulled, avoided, reversed, and set aside; the pleas of prematurity filed by defendants are overruled, and, accordingly, this case is remanded to The Honorable Tenth Judicial District Court in and for the Parish of Red River, State of Louisiana, for further proceedings consistent with the views herein expressed and in accordance with law.
The cost of this appeal is assessed against defendants-appellees; the assessment of all other costs is to await final determination of this cause.
Reversed, pleas of prematurity overruled, and case remanded.