289 So.2d 163 (1973)
Gertrude BOUTERIE et al.
v.
T. W. KLEINPETER et al.
No. 9565.
Court of Appeal of Louisiana, First Circuit.
November 12, 1973.
Rehearing Denied December 21, 1973.
Order February 4, 1974.
Second Rehearing Denied February 15, 1974.
Writ Refused April 11, 1974.
*164 Roger H. Doyle and Donald W. Doyle, Jr., New Orleans, for appellants.
Walter I. Lanier, Jr., and Francis Dugas, Thibodaux, for appellees.
Before LOTTINGER, BLANCHE and CRAIN, JJ.
LOTTINGER, Judge.
Plaintiffs-appellants, Miss Gertrude Bouterie and Mrs. Alma B. Leckert, sued defendants, T. W. Kleinpeter and Dave J. Robichaux, Jr., for cancellation of mineral leases for failure of defendants to make timely monthly payments of royalties accruing under said leases. The Trial Court granted summary judgment in favor of defendants, dismissing the petition of the plaintiffs with prejudice at the plaintiffs' costs. From this judgment, plaintiffs have taken this appeal.
In the Written Reasons for Judgment of the Trial Court, the trial judge quoted a statement of facts from a trial brief submitted by defendants which this court will adopt as its own.
"`Effective September 20, 1961, plaintiffs, Miss Gertrude Bouterie and Mrs. Alma B. Leckert, granted oil, gas and mineral leases to Dr. T. W. Kleinpeter on certain lands located in the Parish of Lafourche; Dave J. Robichaux, Jr. acquired a one-half(½) interest in these leases by way of assignment from Dr. Kleinpeter. The terms of these leases were "Three years and no months from the date hereof" and "so long thereafter as oil, gas or some other mineral is being produced or drilling operations are conducted either on this land or on acreage pooled therewith,..." By order of the Commissioner of Conservation for the State of Louisiana, effective as of June 1, 1962, portions of the lands covered by the above leases were included within a production unit created around the M. B. Moore No. 1 well, which unit was subsequently revised by order dated April 1, 1965. By order of the Commissioner of Conservation, effective as of April 1, 1963, portions of the property covered by the above described leases were included within a production unit created around the L. Lefort No. 1 well, which unit was subsequently revised by order dated April 1, 1965. By order of the Commissioner of Conservation, effective as of February 1, 1965, portions of the property covered by the above described leases were included in a production unit created around the J. Aucoin No. 1 well.
"`Each of the defendants herein paid one-half of the royalties due under these leases to each of the plaintiffs. Thus, each of the defendants sent checks in the amounts and on the dates set out hereinbelow. Royalty checks sent by each of the defendants to Miss Gertrude Bouterie are as follows (up to the date that suit was filed):
 1. May 2, 1963$129.00
 2. July 25, 1963$15.93
 3. September 18, 1963$3.68
 4. October 8, 1963$8.66
 5. October 30, 1963$13.06
 6. December 2, 1963$6.57
 7. December 31, 1963$6.23
 8. March 11,1964$15.41
 9. May 29, 1964$36.16
 10. August 28, 1964$37.15
 11. October 30, 1964$33.38
 12. December 22, 1964$10.85
 13. December 30, 1964$57.41
 14. January 7, 1965$11.80
 15. February 5, 1965$35.34
 16. April 15, 1965$51.58
 17. May 14, 1965$79.70
 18. July 15, 1965$104.00
 19. August 6, 1965$116.74
 20. September 1, 1965$221.72
 21. October 7, 1965$125.35
 22. November 29, 1965$101.32
 23. December 21, 1965$124.06
 24. December 29, 1965$62.13
 25. January 18, 1966$105.07
 26. March 3, 1966$234.97
 27. March 10, 1966$97.54
 28. March 24, 1966$99.92
 29. April 6, 1966$108.31
 30. April 29, 1966$135.40
*165 31. June 7, 1966$120.68
 32. July 8, 1966$128.98
 33. July 29, 1966$119.43
 34. September 1, 1966$129.84
 35. September 30, 1966$148.56
 36. November 1, 1966$138.05
 37. December 1, 1966$133.21
 38. December 29, 1966$128.45
 39. February 1, 1967$135.70
 40. March 1, 1967$147.20
"`Royalty checks sent by each of the defendants to Mrs. Alma B. Leckert are as follows (up to the date that suit was filed):
 1. May 2, 1963$129.00
 2. May 2, 1963$117.59
 3. July 25, 1963$14.52
 4. July 25, 1963$15.93
 5. September 18, 1963$3.35
 6. September 18, 1963$3.68
 7. October 8, 1963$7.90
 8. October 8, 1963$8.66
 9. October 30, 1963$13.06
 10. October 30, 1963$1190
 11. December 2, 1963$5.99
 12. December 2, 1963$6.57
 13. December 31, 1963$5.68
 14. December 31, 1963$6.23
 15. March 11, 1964$15.41
 16. March 11, 1964$14.05
 17. March 11, 1964$44.50
 18. March 11, 1964$48.67
 19. May 29, 1964$69.17
 20. August 28, 1964$71.05
 21. October 30, 1964$63.86
 22. December 22, 1964$20.75
 23. December 30, 1964$109.90
 24. January 7, 1965$22.56
 25. February 5, 1965$67.61
 26. April 15, 1965$98.71
 27. May 14, 1965$152.42
 28. July 15, 1965$200.22
 29. August 6, 1965$220.99
 30. September 1, 1965$220.99
 31. October 7, 1965$237.33
 32. November 29, 1965$123.38
 33. December 21, 1965$234.80
 34. December 29, 1965$123.38
 35. January 18, 1966$197.46
 36. March 3, 1966$441.82
 37. March 10, 1966$193.69
 38. March 24, 1966$195.63
 39. April 6, 1966$204.62
 40. April 29, 1966$135.41
 41. April 29, 1966$122.05
 42. June 7, 1966$228.73
 43. July 8, 1966$244.00
 44. July 29, 1966$225.00
 45. September 1, 1966$245.13
 46. September 30, 1966$279.60
 47. November 1, 1966$260.16
 48. December 1, 1966$251.14
 49. December 29, 1966$242.91
 50. February 1, 1967$256.57
 51. March 1, 1967$278.24
"`Miss Bouterie and Mrs. Leckert cashed all royalty checks sent to them until September 1, 1965. No checks have been cashed by them since that date. (for all of the above information see page 387, 388, 389, 400, 401, 402, and 306 through 310 of the transcript.) The record further shows that during the period from September 1, 1965 through the month of March of 1967 (the month that this suit was filed), a period of some 19 months, that the defendants made 22 royalty payments to the plaintiffs and that the longest period between any two royalty payments was 39 days. (Stipulation Tr401 and 402). The record also shows that immediately before and after the suit was filed that royalty payments were being tendered to the plaintiffs by the defendants. (Stipulation Tr401 and 402).
"`The plaintiffs did not file this suit until March 8, 1967. Your defendants filed dilatory exceptions pleading prematurity on the grounds that the plaintiffs failed to comply with the notice provisions of Paragraph 11 of the lease agreement and that compliance with Paragraph 11 was a condition precedent to the commencement of any judicial action, citing the decision of Bollinger v. Republic Petroleum Corp., 194 So.2d 139 (La.App., 1st Cir. 1966) (Cert. Den.1967). Your defendants also urged that the plaintiffs filed this suit even though royalty payments were being regularly made to them. The District Court *166 sustained the exceptions of prematurity and dismissed the petition of the plaintiffs. The plaintiffs appealed to the First Circuit Court of Appeals and that Court affirmed the decision of the District Court. Bouterie v. Kleinpeter, 234 So.2d 812 (La.App., 1st Cir. 1970) (Rehearing denied May 25, 1970).
"`The plaintiffs then applied to the Supreme Court of Louisiana for a writ of review and this writ was granted on June 29, 1970. (See, 256 La. 612, 237 So.2d 396, 1970). On May 4, 1971, the Supreme Court of Louisiana reversed the rulings of the District Court and the First Circuit Court of Appeals and overruled the exceptions of prematurity and remanded this case to the District Court for further proceedings. The Supreme Court of Louisiana held that the term "operations" within the lease provisions that the lessee should have 60 days after receipt of notice that operations were not being conducted in compliance with the lease in which to commence operations necessary for compliance, was not applicable to the obligations to make proper and timely payments of royalties, but only to physical activities associated with the attempt to make discovery or to maintain production. Bouterie v. Kleinpeter, 258 La. 605, 247 So.2d 548 (1971).
"`On June 16, 1971, your defendants herein filed dilatory exceptions pleading prematurity on the grounds that they had not been properly placed in default by the plaintiffs pursuant to the provisions of Louisiana Revised Civil Code Article 1911 et seq. and filed a motion for summary judgment in this matter. These pleadings were set for hearing on September 10, 1971. On September 9, 1971, the plaintiffs filed an opposing affidavit and a motion in opposition to the motion for summary judgment. On motion of the defendants and by order of the court the hearing on the exceptions of prematurity and the motion for summary judgment were continued until November 24, 1971. On or prior to November 24, 1971, the hearings on the exceptions of prematurity and the motion for summary judgment were continued without date with no opposition from the plaintiffs. On July 18, 1972, Mr. Blake G. Arata of the firm of Gordon, Arata and McCollam withdrew as counsel of record for the plaintiffs in this matter and Messrs. Roger H. Doyle and Donald W. Doyle, Jr. of the firm of Doyle, Smith, Doyle and Watters were entered as counsel of record for the plaintiffs. On September 6, 1972, the plaintiffs filed a rule to show cause why they should not be allowed to accept and cash the royalty payments which have been submitted to them since September 1, 1965, a rule to show cause why the defendants should not be ordered to pay to the plaintiffs a reasonable attorney's fee and expenses for having to oppose the motion for summary judgment and the exceptions of prematurity and a motion to fix the summary judgment, exceptions, and rules to show cause for trial. All of these matters were fixed for trial and were heard on October 9, 1972. At the trial of this matter, a supplemental affidavit by Mrs. Mary Ann Bourgeois was filed by the defendants.'"
We wish to add that plaintiffs requested the Trial Court in their trial brief to grant summary judgment ex proprio motu in their favor. On April 12, 1973, the Trial Court granted the defendants' motion for summary judgment, and on April 18, 1973 the Trial Court denied plaintiffs' motion for a new trial.
In Louisiana, summary judgment is governed in part by Articles 966 and 967 of the Code of Civil Procedure, which two Articles were amended by acts 1966, No. 36, Sec. 1. We herein quote Article 966 and a portion of Article 967:
Art. 966. Motion for summary judgment; procedure
The plaintiff or defendant in the principal or any incidental action, with or without supporting affidavits, may move for a summary judgment in his favor for all or part of the relief for which he has prayed. The plaintiff's motion may *167 be made at any time after the answer has been filed. The defendant's motion may be made at any time.
The motion for summary judgment shall be served at least ten days before the time specified for the hearing. The adverse party may serve opposing affidavits prior to the day of the hearing. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. As amended Acts 1966, No. 36, Sec. 1. (Emphasis supplied)
Art. 967. Same; affidavits
Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or by further affidavits.
When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him. (Emphasis supplied.)
.... As amended Act 1966, No. 35, Sec. 1.
The comment pertaining to these two Articles, as amended, says:
"This and the succeeding article were amended on the recommendation of the Louisiana State Law Institute to accord with the amendment of Rule 56(c) and (e), the source provisions of these two articles, by the United States Supreme Court on January 21, 1963. See 83 S.Ct. 19, 29, 30 (1963). The amendments of these two articles were adopted to: (1) permit the trial judge to consider answers to interrogatories when deciding the motion for summary judgment; and (2) require the adverse party against whom a motion for summary judgment had been taken to file counter-affidavits, and not permit him to rely on the bare allegations of his pleading."
The case of Burrel v. Baton Rouge Securities Company, Inc., 169 So.2d 668 (1st Cir. 1964) further clarifies summary judgment when it says, "The very purpose of a motion of summary judgment is to pierce behind the allegations in the petition which may set up a cause of action but upon which the plaintiff can not produce any proof whatever in support of same." This case further states, "Conflict concerning the ultimate and decisive conclusion to be drawn from undisputed facts does not prevent rendition of a summary judgment, when the conclusion is one to be drawn by the court."
The plaintiffs' argument for overruling the summary judgment granted in favor of the defendants is basically two-fold. First, plaintiffs argue that at the time the Supreme Court of the State of Louisiana heard this case, it issued a mandate to the Trial Court to have a trial on the merits. Secondly, plaintiffs argue that setting the mandate aside, the defendants-appellees are not entitled to a summary judgment because the breach is clear and without justification.
We here quote the language of the Supreme Court on which plaintiffs rely in arguing that the Supreme Court of the State of Louisiana has issued a mandate for a trial on the merits:
"There has been no determination of whether there were delays in royalty payments and, if so, whether the delays *168 were unjustified .... The issue thus presented is predicated upon a determination of fact: Whether royalties were paid timely and whether, if untimely payments were made, justification for the delay existed. These questions are to be determined on remand." This statement is made at 247 So.2d on page 557.
Upon remand, defendants-appellees filed the motion for summary judgment which is now the issue before us. The defendants' motion was replied to by plaintiffs by the filing of opposition accompanied by the affidavit of the plaintiffs. At the hearing of the motion for summary judgment, the defendants filed an affidavit of facts. The motion for summary judgment altered the situation as it existed before the Supreme Court and properly put the issue of summary judgment before the Trial Court. Certainly the above quoted statement made by the Supreme Court, which is relied on by plaintiffs as a mandate for a trial on the merits, cannot be intended to preclude a subsequently filed motion for summary judgment. It was simply a remand to the Trial Court for further proceedings in accordance with our law of which summary judgment forms a part.
With the record including these affidavits before it, the Trial Court had to first determine whether there was any true issue as to the facts, and if not, it secondly had to draw a conclusion as to whether there had been a delay in the payments of royalties, and if any delay did exist, whether such delay was justified. The Trial Court decided that there was no real issue of fact and drew the conclusion from the facts before it that there was no delay in royalty payments which justified cancellation of the leases in question.
The first question before us is whether there is any dispute between plaintiffs and defendants as to the facts which are contained in the record. The dates of production and the dates of payments are facts which are not in dispute. From these facts it was necessary for the Trial Court to draw a conclusion as to whether the royalties were or were not paid timely. Plaintiff argues that because there is a dispute as to conclusion to be drawn that there is a dispute as to the facts. This is not so. Here the facts before the Trial Court were clear, and the only argument was as to the conclusion to be drawn from them. We find summary judgment a proper remedy.
Furthermore, plaintiffs argue that the schedule of payments set forth in the Reasons for Judgment by the trial judge is not broken down as to particular units and, therefore, does not show the period of time in which no payments whatsoever were made as to certain producing units. Admittedly, the schedule of payments used by the trial judge does not break the royalties into the applicable units. However, it is the duty of plaintiffs to present their case, and it is incumbent upon them to present to the Trial Court whatever additional facts they wish the Trial Court to have before reaching its decision. Articles 966 and 967 of the Code of Civil Procedure set forth the manner in which plaintiffs are required to do this when this matter is taken up on a motion for summary judgment. Therefore, plaintiffs cannot argue that because the trial judge did not have all of the facts before him, that there were some facts in dispute. It is incumbent upon plaintiffs to put any facts they want the Trial Court to have into evidence.
Secondly, we must determine whether the trial judge reached an erroneous conclusion in deciding from the facts in the record that the royalty payments were timely made.
It is clear that under the law and the lease provisions that there is no requirement that royalty payments be made on a monthly basis. See Bouterie v. Kleinpeter, 258 La. 605, 247 So.2d 548 (1971) wherein *169 at page 553 of the Southern Reporter appears the following:
Where royalties are concerned, since no stipulated date for payment is set, the jurisprudence is to the effect that failure to pay production royalties for any appreciable length of time without justification amounts to an active breach which terminates the lease without the necessity of putting in default. (Emphasis added)
It is clear from the above that the Supreme Court of the State of Louisiana has recognized the fact that the normal lease agreement, and in particular the lease agreements in this case, do not provide for the monthly payment of royalties and that under these circumstances in order to justify the cancellation of an oil, gas and mineral lease that the failure to pay production royalties must be for an appreciable period of time and must be without justification and in bad faith.
A review of the facts of record shows that after the initial royalty payments were made on May 2, 1963, that continuous royalty payments were made from that date until suit was filed in March of 1967. The longest period of time between any two royalty payments during this entire time was three months, and it is clear from the affidavit of Mrs. Mary Ann Bourgeois, who was the bookkeeper of defendant, David J. Robichaux, Jr., that these royalty payments were rather small. In particular, after the plaintiffs made demand in December of 1964 for monthly royalty payments, checks were sent to the plaintiffs and were accepted and cashed until September 1, 1965. The record further clearly demonstrates that during the period from September 1, 1965 through the month of March of 1967 (the month that this suit was filed), a period of some nineteen months, that the defendants made twenty-two royalty payments each to the plaintiffs and that the longest period between any two royalty payments was thirty-nine days (Stipulation Tr401 and 402). The record also shows that immediately before and after the suit was filed in this case that royalty payments were being tendered to the plaintiffs. A review of the pleadings and the evidence and affidavits of record will show that at the time suit was filed in this matter the plaintiffs had no complaint concerning royalty payments from the M. B. Moore No. 1 Well for condensate royalties from December of 1965 until the date that suit was filed; that the plaintiffs had no complaint concerning royalty payments for gas royalties on the M. B. Moore No. 1 Well from December of 1966 until the date that suit was filed; that the plaintiffs had no complaint concerning the royalty payments for condensate royalty on the L. Lefort No. 1 Well from January of 1965 until suit was filed; that the plaintiffs had no complaint concerning gas royalty payments from the L. Lefort No. 1 Well from March of 1966 until suit was filed; and that the plaintiffs had no complaint concerning the gas and condensate royalty payments from the J. Aucoin No. 1 Well at any time. In other words, by their own affidavits and pleadings the plaintiffs have admitted that at the time suit was filed in this matter they had no present complaints concerning the payment of gas and condensate on the three wells in question. In the six years since this suit has been pending the plaintiffs have not filed an amended petition to include any additional complaints.
With reference to the initial royalty payments on the M. B. Moore No. 1 Well, it is clear from the record that these payments were made on May 2, 1963 to cover the 11 month period of June of 1962 through April of 1963. It is clear under the law of our state that such delays in sending initial royalties are justified for many reasons. For example, it takes time to do the appropriate title examination and curative work, it is necessary to get a finalized survey of the unit, it is necessary to circulate division orders and have them properly executed and signed, it is necessary to set up appropriate accounting procedures, it is necessary to secure a sale of the gas produced *170 under the Natural Gas Act, as well as many other factors.
It is well recognized in the law that "between the completion of a well or the formation of a new unit and the first royalty payment thereon, there must be some time lag to complete the details necessary to effect these payments." See Touchet v. Humble Oil & Refining Co., 191 F.Supp. 291 (W.D.La.1960) and Bonsall v. Humble Oil & Refining Co., 201 F.Supp. 516 (W. D.La.1961), affirmed 300 F.2d 151 (5th Cir. 1962). It should be further noted that with reference to the L. Lefort No. 1 Well there was an eleven month delay from the completion of the well in April of 1963 until the first royalty payment in March of 1964 for gas royalties and a twenty month delay on condensate payments from April of 1963 until December of 1964. In the Bonsall case cited above there was a twenty month delay in payment of royalties and the court found that this was not an unreasonable delay. It should be further noted that the plaintiffs complained of no delays with reference to the J. Aucoin No. 1 Well and it should be noted that the plaintiffs made no complaint concerning these initial delays in unit formation and payment of royalties until suit was filed in this matter.
The plaintiffs complained about the payments for condensate on the M. B. Moore No. 1 Well during the period from October of 1964 until March of 1965. The affidavit of Mrs. Mary Ann Bourgeois clearly shows that these payments were being made at this time and were merged with the gas payments which were being sent to and cashed by the plaintiffs. The plaintiffs complained that the gas and condensate royalty payments on the M. B. Moore No. 1 Well for the months of April through October of 1965 were not made until December 22, 1965. The record in this matter clearly shows that on April 1, 1965, the M. B. Moore No. 1 Well unit was revised by a Conservation Commission order. Likewise the plaintiffs complained about the gas payments on the L. Lefort No. 1 Well during the period of April of 1965 through February of 1966. The record in this matter also shows that the L. Lefort No. 1 Well was revised by Conservation Commission order on April 1, 1965. The same considerations that control the initial payment of royalties when a unit is formed would be applicable in the situation where the unit is revised by order of the Conservation Commission. The only other real complaint that the plaintiffs have concerning royalty payments is with reference to the allegation that no gas royalty payments have been made for the period of May through November of 1966, for the M. B. Moore No. 1 Well. The record in this matter will show that it is the position of the defendants that no payments were made because none were due and further that during this same period of time there were payments being made for condensate on the M. B. Moore No. 1 Well, there were payments being made for gas and condensate on the L. Lefort No. 1 Well, and there were payments being made for gas and condensate on the J. Aucoin No. 1 Well. Further a review of the affidavit of Mrs. Mary Ann Bourgeois shows that at all times about which the plaintiffs complained that substantial royalty payments were being made pursuant to the provisions of the lease and that at the time that suit was filed all royalty payments were up to date.
Under these circumstances, it is clear that the Trial Court was correct in concluding that there was no delay in the payment of royalties which justified cancellation of the leases in question, and in so concluding, rendering summary judgment in favor of defendants.
For the above and foregoing reasons, the judgment of the Lower Court is affirmed, all costs, including the cost of this appeal, to be borne by the appellants.
Judgment affirmed.

ORDER
On December 21, 1973, this Court, after a consideration of the "Application for Rehearing" *171 filed herein on behalf of the plaintiff-appellant, issued a judgment indicating that we had not considered the application for the reason that it had not been timely filed.
On further showing by the appellants that they did not receive the notice of judgment as required by Rule 11, of the Uniform Rules of the Courts of Appeal, and upon verification of this fact by the Clerk,
It is ordered, adjudged and decreed that the judgment of December 21, 1973, be recalled, vacated and set aside, and that the application for rehearing filed by the plaintiffs on November 29, 1973, be considered as having been timely filed and be considered for a decision on this application in due course.